```
------------------------------------ x
UNITED STATES OF AMERICA,           :
                                    :
        - against -                 :      17-CR-283(LAP)
                                    :
JORGE IRIZZARY,                     :
                                    :
                Defendant.          :
------------------------------------ x
```

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

    Before the Court is Defendant Jorge Irizarry's motion for temporary release on bail under Title 18, United States Code, Section 3142(i).  At the time of the Defendant's arrest, the Defendant was detained based on his danger to the community and risk of flight.  The Defendant's motion for temporary release is premised on the recent outbreak of COVID-19 in the greater New York City area and his fear that he will contract the disease at the Metropolitan Correctional Center ("MCC").  For the reasons set forth below, the Court finds that the risks the Defendant poses to the community as a largescale crack dealer with a lengthy criminal history far outweigh the potential health risks to the Defendant, a 26-year old man whose only underlying health issues are asthma and anxiety.  Accordingly, the motion for temporary release is denied.

APPLICABLE LAW

Under the Bail Reform Act, defendants are to be detained if no condition or combination of conditions "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In making this determination, the Court is to consider:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . .;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C § 3142(g). If—as here—the Court finds there is probable cause to believe that a defendant has violated Title 18, Untied States Code, Section 1959(a), 924(c), or 924(j), or has violated Title 21, United States Code, Section 846 and 841(b)(1)(A), then "it shall be presumed that no condition or combination of

conditions will reasonably assure the appearance of [a defendant] as required and the safety of the community." 18 U.S.C § 3142(e)(3)(A) & (B). Even when a defendant "has met his burden of production" to rebut the presumption favoring detention, that presumption "does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (reversing bail and denying release of defendants involved in conspiracy to commit a single armed drug robbery, which never came to fruition).

The Defendant does not contend that he can overcome the presumption requiring pretrial detention under 18 U.S.C. § 3142(e) or even that he should be released under the § 3142(g) analysis. Instead, he argues that he should be temporarily released under 18 U.S.C. § 3142(i). Pursuant to Title 18, United States Code, Section 3142(i), after a defendant has been ordered detained pretrial, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The "defendant has the burden of showing that temporary release is necessary" for one of those enumerated purposes. See United States v. Dupree, 833 F. Supp. 2d 241, 246 (S.D.N.Y. 2011). In considering whether the defendant has met

his burden, "a court must balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention. In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case." United States v. Jahvonne Chambers, 20 Cr. 135 (S.D.N.Y. Mar. 31, 2020) (Furman, J.) (Op. at 2) (citation omitted).

The Defendant is a member of the "Wild Card Crips," a violent set of the nationwide Crips gang based in the Bronx—specifically, in the Kingsbridge and Burnside neighborhoods. The Wild Card Crips made their money selling drugs, primarily heroin and crack cocaine. The Defendant appears to have been based in the Burnside neighborhood and to have sold mainly crack.[1] As with many members of the Wild Card Crips, the Defendant had access to firearms while he was selling crack, and witnesses saw the Defendant holding firearms.

The Wild Cards in general—and the Defendant in particular—used guns to defend their valuable drug turf and to fire on rival gang members. The primary rivals for the Wild Cards were a set of Bloods who were based on the opposite side of the Grand Concourse. In March 2015, when the Bloods had been encroaching into the Wild Card's territory one too many times, the Defendant

---

[1] The Defendant has been arrested on multiple occasions for selling crack.

and some of his fellow Crips decided it was time to take action. They planned to retaliate by going into the Bloods' territory, finding one of their rivals, and killing him. On March 13, 2015, they did just that: the Defendant acted as a lookout as one of his fellow gang members shot and killed Jonathan Martinez, a/k/a "Tico," a member of the rival Bloods set.

In 2017, the instant case was filed after a grand jury charged a number of members of the Wild Cards from the Burnside neighborhood with narcotics and firearms charges. At some point after those initial charges were filed, the Defendant fled to Florida. In March 2019, the Defendant and certain of his fellow gang members were charged in superseding indictments with, among other things, racketeering, narcotics distribution, and the murder of Jonathan Martinez. After law enforcement arrested the Defendant in Florida, he was ordered detained.

The Defendant has not shown that temporary release is appropriate for him, especially given the significant risks of danger and nonappearance. Indeed, he has not even met § 3142(i)'s threshold requirement of identifying an "appropriate person" in whose custody he would be placed. The Defendant has proposed that his mother would co-sign his bond, but he has not proposed that she would serve as a custodian, and he fails to provide any assurances as to why his mother would be appropriate in such a role. The mother is particularly unlikely to be a satisfactory custodian in this situation because she works for a

5

service that makes "house calls" to sick patients who do not want to leave their homes—a living situation that would be much more likely to expose the Defendant to COVID-19 than his current situation.

Nor does the recent outbreak of COVID-19 provide a "compelling reason" for the Court to release the Defendant despite the significant risks his release would pose for the community. The COVID-19 pandemic is certainly a unique and challenging one, but it is not one that warrants the Defendant's release. At age 26, the Defendant is fortunate to be in an age bracket which the Center for Disease Control considers one of the least at-risk. According to defense counsel, the Defendant's increased risk comes from his having asthma. While it stands to reason that COVID-19 could pose complications for someone suffering from asthma, unfortunately, like much about COVID-19 at this stage, just how much asthma can exacerbate the risks of COVID-19 is currently unknown. And, as noted by the Government, BOP has taken numerous steps to mitigate the risk of COVID-19 spreading within the MCC.

In contrast to the steps taken by the MCC to mitigate the spread of the virus, the defendant has proffered no facts about the apartment building where he would be released—the relative isolation of that apartment; any measures taken where that apartment building is located to limit the spread of COVID-19; and, if other residents of the apartment building present have

tested positive for COVID-19 or manifested any symptoms related to COVID-19. The Defendant similarly has not proffered how his access to medical care would be improved by residing outside the MCC if he contracted COVID-19. Several courts have already acknowledged that, in light of the steps taken by prison facilities and the fact that there has not been extensive spread in the prison system, COVID-19 does not present a "compelling" reason favoring temporary release. See, e.g., United States v. Nivar, 19 Cr. 902 (S.D.N.Y. March 19, 2020) (McMahon, C.J.) (denial of pretrial bail based on COVID-19).

Even under normal conditions, electronic monitoring does not suffice to restrain violent criminals who, like Irizarry, are members of organized gangs. See United States v. Orena, 986 F.2d 628, 632 (2d Cir.1993) (collecting cases); see also United States v. Dono, 275 F. App'x 35, 37 (2d Cir. 2008) (relying on Orena). Electronic monitoring also has limited utility in disabling drug dealers, such as the Defendant, who are often able to run their illegal operation out of their homes.[2] And those measures are likely to be even less effective today, given the effect that COVID-19 is having on the City and on the resources of institutions such as Pretrial Services. Pretrial Services has

---

[2] Likewise, there is at least one documented instance of a defendant cutting off his ankle bracelet after being granted pretrial release in light of COVID-19. See, e.g., https://nypost.com/2020/03/30/accused-meth-dealer-cuts-off-ankle-monitor-after-hes-spared-jailover-coronavirus/.

7

informed the Court that its resources are limited and, in particular, that they are in short supply of electronic monitors. Pretrial has even been forced to remove electronic monitoring from some Defendants who had previously been placed on electronic monitoring. Social distancing measures make it difficult for pretrial officers to have in-person visits—and risk spreading the virus to the extent the visits are made. Moreover, in normal circumstances, a Defendant on pretrial release is given help finding legitimate employment to mitigate the risk that the Defendant returns to his illegal sources of income. Here, the Defendant will be released into a world where, at the moment, there are limited employment opportunities, and the temptation to support himself through illegal activity will be high. All of this means that the new circumstances increase, rather than decrease, the risks the Defendant poses to the community if released.

## CONCLUSION

Here, the Defendant has not overcome the presumption or demonstrated a compelling reason for temporary release. He remains a danger to the community; he remains a flight risk. The Defendant is 26 years old and, even considering that he suffers from asthma, he has not demonstrated that the proposed conditions of temporary release would benefit his health. The Court finds that the risk to the community and the risk of flight posed by Mr. Irizarry's release far outweighs any purported health benefit

to him.  Accordingly, the request for temporary release is denied.

SO ORDERED.

Dated:    New York, NY
          April 8, 2020

_____
Loretta A. Preska
Senior United States District Judge